UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 22-3379 (JEB) |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, moves for summary judgment in this action, which arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support, Defendant relies on the accompanying Memorandum of Law, Statement of Material Facts as to Which There Is No Genuine Dispute, and Declaration of Michael G. Seidel.

Dated: October 6, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

 /s/ Sean Tepe
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2533

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Civil Action No. 22-3379 (JEB) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, respectfully submits this memorandum in support of its motion for summary judgment pursuant to the Court's July 7, 2023, Minute Order. The instant motion, without prejudice to further motion practice on additional exemptions, if necessary, seeks summary judgment on the FBI's withholdings pursuant to Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), of the Freedom of Information Act ("FOIA").[1]

In response to Plaintiffs' request for video taken by the FBI of the civil unrest in Kenosha, Wisconsin in August 2020, the FBI withheld almost all aerial surveillance video taken by the FBI. The only issue presently before the Court is whether the FBI may withhold the non-public aerial surveillance video pursuant to FOIA Exemption 7(E). *See* Joint Status Report (ECF No. 12). As

---

[1] As specified in the parties' July 6, 2023, Joint Status Report (ECF No. 12), given that the FBI believes Exemption 7(E) protects the non-public portions of the video in full, the parties believe that it would be most efficient to engage in bifurcated summary judgment briefing whereby the parties initially brief only the issue of the Exemption 7(E) withholdings. If Plaintiffs prevail, then the FBI would process the video for additional FOIA exemptions. If the FBI prevails, then the FBI will not have to process any footage beyond the short portion of the video that was disclosed publicly at the trial of Kyle Rittenhouse and already produced to Plaintiffs.

explained in greater detail in the Declaration of Michael G. Seidel ("Seidel Declaration"), the FBI correctly determined that disclosure of the non-public aerial surveillance video could reasonably be expected to risk circumvention of the law and be used by criminals, investigative subjects, and national security adversaries to thwart law enforcement. Therefore, the non-public video is exempt from disclosure under the FOIA. Accordingly, the FBI respectfully requests that the Court grant its motion for summary judgment.

## BACKGROUND

By email dated November 29, 2021, Plaintiffs submitted a FOIA request to the FBI containing, among other requests, a request for "all video recorded or otherwise taken by the FBI (or any of its employees or contractors) during the Kenosha, Wisconsin riots beginning on August 23, 2020, and specifically including video captured, recorded or taken on August 25, 2020." Seidel Decl. ¶¶ 6-7, Ex. A. The FBI located over 32 hours of aerial surveillance video as responsive to this request. *Id*. ¶ 31. The FBI determined that all of the video—with the exception of an 83 second clip disclosed at the trial of Kyle Rittenhouse—is exempt pursuant to 5 U.SC. § 552(b)(7)(E). *Id*. ¶¶ 4-5. Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" and that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.SC. § 552(b)(7)(E). The FBI informed Plaintiffs of this exemption decision by letter dated May 4, 2023. *Id*. ¶ 19, Ex. L. The FBI released the clip disclosed at the Rittenhouse trial on August 21, 2023. *Id*. ¶ 20, Ex. M.

The FBI conducted aerial surveillance of civil unrest in Kenosha County, Wisconsin in August 2020 as part of assistance requested by the Kenosha County Sheriff's Office. *Id*. ¶ 22. The FBI withheld the non-public aerial surveillance video because disclosure of that video would

disclose law enforcement techniques and procedures that could risk future circumvention of the law by criminals and national security adversaries. *Id*. ¶¶ 23-33. Specifically, release of the non-public video would effectively disclose the scope of aerial surveillance, including the dates, times, and locations chosen for the FBI's surveillance. *Id*. ¶ 27. It would also disclose what areas and activities on the ground were of points of investigative focus for the FBI. *Id*. The FBI determined that criminals and national security adversaries could use the video to avoid detection in the future. *Id*. ¶¶ 27-32.

Similarly, disclosure of the non-public surveillance video could be combined with publicly available information, such as that provided by the Federal Aviation Administration, to discover FBI surveillance aircraft tail numbers, flight plans, and flight patterns. *Id*. ¶ 30. That information could be used to track FBI surveillance and avoid detection. *Id*. Disclosure of the non-public surveillance video could be used to learn the capabilities of the FBI aircraft, including how long the aircraft can stay deployed, and would reveal the capabilities of the cameras used on the aircraft. *Id*. ¶¶ 31-32. For these and similar reasons, the FBI determined that the non-public aerial surveillance video is protected under Exemption 7(E).

## LEGAL STANDARDS

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Jud. Watch, Inc. v. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation omitted); *see also Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been

disclosed after redaction of exempt information." *Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

Even though under FOIA "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B), "in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal quotation marks and citation omitted; emphasis in original); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir.1993) (noting deference to expertise of agencies engaged in national security and foreign policy). As the D.C. Circuit has recognized:

> [S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. Moreover, a reviewing court must take into account that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm. Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.

*Wolf*, 473 F.3d at 374 (internal quotation marks, citations, and alterations omitted).

## ARGUMENT

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption. *See* 5 U.S.C. § 552(b)(7). As such, judicial review of an agency's withholding under FOIA Exemption (b)(7) "requires a two-part inquiry." *FBI v. Abramson*, 456 U.S. 615, 622 (1982). First, the relevant information must have been "compiled for law enforcement purposes." *Id*. A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim"

- 4 -

of its rationality. *See Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 44 (D.D.C. 1999). Courts assume that "criminal law enforcement agency" records were created for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt*, 673 F.2d at 418-19. The FBI is such an agency, and the aerial surveillance video was compiled in response to "the Kenosha County Sheriff's Office [request] for assistance in handling the violence that erupted after an officer involved shooting in Kenosha, Wisconsin." Seidel Decl. ¶¶ 21-22.

Subpart (E) of Exemption 7 protects from disclosure information in law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *Pub. Emps. for Env't Resp.v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation marks and alterations omitted). Here, the FBI has explained through the Seidel Declaration "logically how the release of the requested information might create a risk of circumvention of the law" in multiple ways. *Id*.

The Seidel Declaration first explains that releasing the non-public aerial surveillance video would disclose the scope of the FBI's surveillance practices, which in turn could be used by criminals and national security adversaries to avoid surveillance. Seidel Decl. ¶ 27. The FBI's declarant explains that disclosure of the non-public surveillance video would effectively "disclose the dates, times, and locations chosen for surveillance," which the FBI typically protects and courts have found to be exempt under Exemption 7(E). *See id.* ¶¶ 25, 27; *Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013) (finding Exemption 7(E) protected "the location, identity, and expertise of the investigating FBI units, as this could allow an individual to avoid or circumvent those locations and those activities that are the targets of investigation"); *Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 199-200 (D.D.C. 2010) (concluding videos and photographs of Fish and Wildlife Service enforcement protected in full under Exemption 7(E) because they would disclose "location and timing" of surveillance).

Relatedly, disclosure of the non-public surveillance video would show "what specific locations were being surveilled and details of what the FBI determined required that additional focus," which could be used by criminal and national security adversaries to avoid detection or investigative focus. Seidel Decl. ¶ 27. Exemption of such information is consistent with other decisions in which judges in this District have found that "revealing the FBI's points of focus in the particular investigations would necessarily reveal its techniques and procedures." *Reps. Comm. for Freedom of Press v. FBI*, Civ. A. No. 17-1701 (RC), 2022 WL 13840088, at *8 (D.D.C. Oct. 21, 2022) (citing cases).

The Seidel Declaration also explains that the release of the non-public aerial surveillance video would disclose the capabilities of the FBI's aerial surveillance program in various respects. Seidel Decl. ¶¶ 29-32. Disclosure of the non-public video could be combined with publicly

available information, such as that provided by the Federal Aviation Administration, "to discover FBI surveillance aircraft tail numbers" as well as "identify FBI aircraft flight plans and patterns." *Id*. ¶ 30. Such information could be used by investigative targets "to track registered flights in real time" and thereby "avoid detection" based on FBI plane flight plans and patterns. *Id*. In *BuzzFeed, Inc. v. Department of Justice*, 344 F. Supp. 3d 396 (D.D.C. 2018), the Court ruled that Exemption 7(E) protected records sought regarding the FBI's aerial surveillance program. In that FOIA request, plaintiff had identified twenty-seven planes by tail number and observed location and requested "flight logs" and "evidence logs" for each of those aircraft, to which the FBI issued a *Glomar* response. *Id*. at 401. The Court reasoned that although there is general public awareness that the FBI uses airplanes, a disclosure that would constitute "the FBI's own confirmation of its use of specific aircraft . . . . poses a risk of circumvention of the law[.]" *Id*. at 407.

In addition to the risk of identifying the aircraft, disclosure would potentially allow criminals and subjects of national security investigations to determine how long such aircraft can stay deployed and the capabilities of the cameras used on the aircraft. Seidel Decl. ¶¶ 31-32. Videos and photographs that would reveal the FBI's "vantage points" for surveillance have been protected under Exemption 7(E) previousl. *See Jud. Watch, Inc. v. Dep't of State*, Civ. A. No. 12-893 (JDB), 2017 WL 3913212, at *4 (D.D.C. Sept. 6, 2017) (concluding FBI could withhold in full under Exemption 7(E) FBI surveillance videos and photographs of investigation subject); *Ford v. Dep't of Just.*, 208 F. Supp. 3d 237, 253-54 (D.D.C. 2016) (deciding bank surveillance video is exempt because it would reveal camera locations).

Courts routinely grant summary judgment to agencies when release of surveillance information would risk circumvention of the law. *See, e.g. Soghoian v. Dep't of Just.*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (protecting electronic surveillance techniques because release of

information showing "what information is collected, how it is collected, and more importantly, when it is not collected" could allow criminals to evade detection); *Lewis-Bey v. Dep't of Just.*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (crediting ATF representation that details of electronic surveillance techniques, including the "circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed," would assist suspects in circumventing the law).

Because the same exemption analysis applies to all the aerial surveillance video taken by the FBI, a categorical exemption may be claimed. *See Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 15 (D.D.C. 2021) (allowing categorical treatment of withheld video because "the FBI's reason for withholding one video is the same as for all the others"); *Judicial Watch v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("Exemption 7(E) affords categorical protection for techniques and procedures used in law enforcement investigations and prosecutions").

Further, the FBI cannot reasonably segregate non-exempt portions of the non-public surveillance video from exempt portions. Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information, 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of

evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, releasing portions of the video could risk of circumvention of the law because such released material could be "pieced together to reveal the same tradecraft that the FBI is protecting by withholding the videos themselves." *Jud. Watch*, 2017 WL 3913212, at *5 (crediting FBI representation that video not segregable); *Nat'l Pub. Radio*, 539 F. Supp. 3d at 16 (finding "to the extent that parts of the ballistics videos contain non-exempt material, they are inextricably intertwined with" exempt parts). Given that the above-described protected law enforcement techniques are embedded throughout the aerial surveillance video, any seemingly non-exempt material is clearly inextricably intertwined with exempt material (*e.g.*, time of day, location, camera capability would be disclosed in even the most basic footage) that could be used to circumvent future law enforcement. Seidel Decl. ¶ 34.

Plaintiffs may argue that the disclosure of the 83 second clip at the Kyle Rittenhouse criminal trial somehow undermines FBI's claimed exemptions, but the law is clear that an agency may exempt material that has not been made public. *See, e.g., Moore v. United States*, 602 F. Supp. 2d 189, 193-94 (D.D.C. 2009) (rejecting argument that trial disclosure of certain records meant "similar ones" that had not been disclosed were not exempt). The "public-domain doctrine" has emerged as the dominant paradigm for evaluating the waiver of a potential FOIA exemption. Under that doctrine, records that are not public do not lose their protection because similar material is public. The plaintiff bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992); *see also Showing Animals Respect*, 730 F. Supp. 2d at 197-98 ("[A]n

agency need not disclose an exempt record unless there is an identical record in the public domain, and it is the requester's burden to show that the information is freely available.").

Finally, the FBI has demonstrated that it reasonably foresees that disclosure would harm an interest protected by Exemption 7(E).  Seidel Decl. ¶¶ 25-33, 35.  Under the FOIA Improvement Act of 2016, FBI may not withhold exempt materials unless FBI also "reasonably foresees that disclosure would harm an interest protected by" the FOIA exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I).  "[T]he foreseeable harm requirement impose[s] an independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citations and quotations omitted).  The agency must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id*. (quoting H.R. REP. NO. 391, at 9).

In the Exemption 7(E) context, judges in this District have determined that the foreseeable harm analysis overlaps with the analysis used to demonstrate a risk of circumvention of the law resulting from disclosure.  Accordingly, "[t]he proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure." *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022); *see also Buzzfeed, Inc. v. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 148 (D.D.C. 2022) (stating "no further foreseeable harm analysis is needed because 'Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm'")  (quoting *Reps. Comm. of Freedom of the Press v. CBP*, 567 F. Supp. 3d 97 (D.D.C. 2021)); *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 83 (D.D.C. 2022) (finding agency met foreseeable harm requirement by satisfying "circumvention of the law" requirement).

## CONCLUSION

The FBI aerial surveillance video is precisely the type of law enforcement material that the FOIA protects from disclosure. For the foregoing reasons, Defendant FBI respectfully requests that the Court grant summary judgment in its favor.

Dated: October 6, 2023
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____/s/ Sean Tepe_____
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2533

*Attorneys for the United States of America*