UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GUN OWNERS OF AMERICA, INC.,** *et al.*,<br><br>     **Plaintiffs,**<br><br>         v.<br><br>**FEDERAL BUREAU OF INVESTIGATION,**<br><br>     **Defendant.** | Civil Action No. 22-3379 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Gun Owners of America and Gun Owners Foundation hold themselves out as non-profit organizations dedicated to educating the public on and conducting activities in defense of the Second Amendment and the right to keep and bear arms. Through a Freedom of Information Act request, they sought, among other things, surveillance video taken by the Federal Bureau of Investigation during the civil unrest in Kenosha, Wisconsin, in August 2020. When the Bureau withheld the video responsive to their request, Plaintiffs brought this suit. The FBI now moves for summary judgment, arguing that the non-public portion of the video is exempt from disclosure pursuant to Exemption 7(E) of FOIA. As the Court agrees, it will grant the Motion.

**I.     Background**

Because Plaintiffs filed no opposition to the instant Motion for Summary Judgment, the Court accepts as true all of Defendant's supported factual assertions. See Fed. R. Civ. P. 56(e)(2); Winston & Strawn, LLP v. McLean, 843 F.3d 503, 509 (D.C. Cir. 2016).

On November 29, 2021, Plaintiffs submitted a three-part FOIA request to the FBI, seeking video recordings it took: (a) during the Kenosha, Wisconsin, riots in August 2020, (b) at or near the location of the 2020 Virginia Citizens Defense League Lobby Day, and (c) during the January 6, 2021, events at the United States Capitol.  See ECF No. 13-2 (Declaration of Michael Seidel), Exh. A (Plaintiffs' FOIA Request).

On December 9, 2021, the FBI denied part (a) of Plaintiffs' request on the ground that the records were exempt under 5 U.S.C. § 552(b)(7)(A).  See Seidel Decl., Exh. B (Defendant's Letter Denying Plaintiffs' Request Dated December 9, 2021).  Plaintiffs appealed this decision to the Department of Justice, Office of Informational Policy, which thereafter directed the FBI to process the requested records.  See id., Exh. E (Letter Remanding Plaintiffs' Request).  As Defendant did not produce the requested material, Plaintiffs filed the present suit on November 3, 2022.  See ECF No. 1 (Compl.).  The Bureau then informed Plaintiffs that there were over 32 hours of aerial-surveillance video responsive to part (a) of the request.  See ECF No. 12 (Joint Status Report), ¶ 3.  The FBI asserted, however, that except for an 83-second clip of the video released in court at the criminal trial of Kyle Rittenhouse, which the FBI agreed to release, the responsive material identified was exempt from disclosure, this time, pursuant to 5 U.S.C. § 552(b)(7)(E) and other potential exemptions.  See Seidel Decl., Exh. L (Defendant's Letter Denying Plaintiffs' Request Dated May 4, 2023); Joint Status Report, ¶ 4.  The FBI now moves for summary judgment, and Plaintiffs have filed no opposition.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.

2

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). When the non-movant fails to file an opposition, the court may not treat the motion as conceded. See Winston & Strawn, 843 F.3d at 506. Rather, "a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." Id. (quoting Grimes v. Dist. of Columbia, 794 F.3d 83, 97 (D.C. Cir. 2015)). In doing so, the court may, however, accept the moving party's uncontested assertions of fact as true. See Fed. R. Civ. P. 56(e)(2).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.    Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The parties have agreed that, at this stage, the only applicable FOIA exemption the Court needs to consider is 7(E). See Joint Status Report, ¶ 7. To that exemption the Court now turns, following which it addresses foreseeable harm and segregability.

A. Exemption 7(E)

Exemption 7 authorizes the Government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" meets one of six requirements. See 5 U.S.C. § 552(b)(7); see also Keys v. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) ("[Exemption 7] exempts such documents from disclosure only to the extent that production of the information might be expected to produce one of six specified harms."). The fifth subparagraph — 7(E) — permits withholding if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In order to properly invoke Exemption 7(E), then, the agency must satisfy two requirements: it must show first that the record was compiled for law-enforcement purposes and second that production would disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that would risk circumvention of the law. The Court will look at each requirement in turn.

1. *Law-Enforcement Purposes*

There is little doubt as to the first. A record is compiled for law-enforcement purposes if it "was created or acquired in the course of an investigation related to the enforcement of federal laws," and "the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (cleaned up).

The FBI has satisfied that burden. To start, because the Bureau is a criminal law-enforcement agency, courts apply "a more deferential attitude" towards its claims of law-

5

enforcement purposes in light of the "generally accurate assumption that federal agencies act within their legislated purposes." Pratt v. Webster, 673 F.2d 408, 418 & n.25 (D.C. Cir. 1982); Blanton v. Dep't of Justice, 63 F. Supp. 2d 35, 44 (D.D.C. 1999).

As the agency's appended declaration makes clear, the FBI compiled the video record at issue as part of the response to a request by the Kenosha County Sheriff's Office for assistance in handling the violence that erupted after a shooting in Kenosha in August 2020. See Seidel Decl., ¶ 22. This was undertaken pursuant to the FBI's "assistance to law enforcement function," as prescribed by the Attorney General's Guidelines for Domestic FBI Operations promulgated pursuant to 28 U.S.C. §§ 533, 534. Id., ¶¶ 21–22. The agency's aerial surveillance conducted in this context thus meet the law-enforcement purposes test because it was related to the enforcement of federal laws and had a rational nexus to the FBI's law-enforcement duties. Defendant easily clears the first hurdle.

## 2. *Guidelines, Techniques, and Procedures*

The FBI next asserts that disclosure would both reveal law-enforcement guidelines, techniques, or procedures "generally unknown to the public," Albuquerque Pub. Co. v. Dep't of Justice, 726 F. Supp. 851, 857 (D.D.C. 1989), and that it could "reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

While the Government faces a "low bar" to show that it has properly withheld documents containing law-enforcement techniques and procedures, Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011), it must nevertheless provide a "relatively detailed justification" that permits the reviewing court to make a meaningful assessment of the withholdings. Strunk v. Dep't of State, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (quoting Mead Data Central, Inc., v. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)). "Generic portrayals of categories of documents and

vaguely formulated descriptions will not suffice." Am. Immigration Council v. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 246 (D.D.C. 2013). In sum, the Government must provide sufficient facts and context to allow the reviewing court to "deduce something of the nature of the techniques in question." Clemente v. FBI, 741 F. Supp. 2d 64, 88 (D.D.C. 2010).

The FBI plainly satisfies this burden via the Seidel Declaration. The declarant, the Section Chief of the FBI's Record/Information Dissemination Section, explains that releasing the aerial-surveillance video would disclose details about the FBI's surveillance program unknown to the public, including the "dates, times and locations chosen for surveillance" and the specific areas where the FBI chose to focus and zoom in on. See Seidel Decl., ¶ 27. The non-public video, he further explains, could also be combined with publicly available information to identify FBI surveillance aircraft, thus allowing "adversaries to ascertain the fuel capacities of the aircraft" and the "surveillance camera capabilities." Id., ¶¶ 30–32.

Disclosure of the FBI surveillance-program practices, moreover, would be reasonably expected to risk circumvention of the law. Criminal and national-security adversaries could use the non-public information to adjust their behaviors and avoid aerial surveillance. Id., ¶ 27. They could also use aircraft tail numbers and information about fuel capacities and surveillance-camera capabilities to track FBI surveillance and avoid detection. Id., ¶¶ 31–32. The FBI thus provides ample justification for withholding the aerial-surveillance video under Exemption 7(E).

B. Foreseeable Harm

The Court next examines whether the FBI satisfies the related foreseeable-harm requirement under 5 U.S.C. § 552(a)(8)(A)(i)(I). That section allows an agency to withhold information only if it "reasonably foresees that disclosure would harm an interest protected by" one of the FOIA exemptions. See 5 U.S.C. § 552(a)(8)(A)(i)(I). To pass muster, the agency

must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up).  In the context of Exemption 7(E), because the exemption already requires a showing of risk of circumvention of the law, no further foreseeable-harm analysis is necessary.  See 100 Reps. v. Dep't of State, 602 F. Supp. 3d 41, 83 (D.D.C. 2022) (explaining that foreseeable-harm requirement is similar and does not heighten Exemption 7(E)'s circumvention-of-law requirement); Buzzfeed, Inc. v. Dep't of Homeland Sec., 610 F. Supp. 3d 139, 148 n.1 (D.D.C. 2022) ("[N]o further foreseeable harm analysis is needed because Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm.") (cleaned up).  The Court thus finds that the FBI fulfills the foreseeable-harm requirement.

    C.  Segregability

Finally, the Court considers the issue of segregability.  FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data, 566 F.2d at 260.  While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data, 566 F.2d at 261.  The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see

also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity").

The FBI here has provided sufficient justifications for its claim that, but for the already released 83-second clip, the video is nonsegregable. First, any seemingly non-exempt portions of the video — beyond the clip already released — are so inextricably intertwined with the exempt parts that their disclosure would still reveal details of the FBI's law-enforcement techniques such as aerial-camera capabilities and locations of surveillance. See Seidel Decl., ¶ 34; see also NPR v. FBI, 539 F. Supp. 3d 1, 16 (D.D.C. 2021) ("[I]t is unclear how the FBI would segregate or redact a video when the content [plaintiffs are] seeking is the content that poses a risk."). Second, the fact that 83 seconds of the video were previously disclosed in public at the criminal trial of Kyle Rittenhouse does not undermine the FBI's nonsegregability argument. As the Seidel Declaration explains, although the 83-second clip "risked circumvention [of law] to some degree," it does not provide enough information to criminals and adversaries to discern the details of the FBI's surveillance practices given its short length. See Seidel Decl., ¶ 28. Disclosure of additional footage, however, would provide "a holistic view of the scope of FBI aerial surveillance operations" that adversaries could use to circumvent the law. Id. The Court therefore finds that the non-public video was properly withheld in full.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: January 18, 2024